1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

CALVIN LESLIE,

    Plaintiff

v.

CECILIA STERN, et al.,

    Defendants

Case No.: 3:25-cv-00397-MMD-CSD

**Order**

Re: ECF Nos. 1, 1-1, 1-2

Plaintiff, who is an inmate in the custody of the Nevada Department of Corrections (NDOC), has filed an application to proceed in forma pauperis (IFP) (ECF No. 1), a pro se complaint (ECF No. 1-1), and a motion for appointment of counsel (ECF No. 1-2).

**I. IFP APPLICATION**

A person may be granted permission to proceed IFP if the person "submits an affidavit that includes a statement of all assets such [person] possesses [and] that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1).

The Local Rules of Practice for the District of Nevada provide: "Any person who is unable to prepay the fees in a civil case may apply to the court for authority to proceed [IFP]. The application must be made on the form provided by the court and must include a financial affidavit disclosing the applicant's income, assets, expenses, and liabilities." LSR 1-1.

"[T]he supporting affidavits [must] state the facts as to [the] affiant's poverty with some particularity, definiteness and certainty." *U.S. v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981)

(quotation marks and citation omitted). A litigant need not "be absolutely destitute to enjoy the benefits of the statute." *Adkins v. E.I. Du Pont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

An inmate submitting an application to proceed IFP must also "submit a certificate from the institution certifying the amount of funds currently held in the applicant's trust account at the institution and the net deposits in the applicant's account for the six months prior to the date of submission of the application." LSR 1-2; *see also* 28 U.S.C. § 1915(a)(2). If the inmate has been at the institution for less than six months, "the certificate must show the account's activity for this shortened period." LSR 1-2.

If a prisoner brings a civil action IFP, the prisoner is still required to pay the full amount of the filing fee. 28 U.S.C. § 1915(b)(1). The court will assess and collect (when funds exist) an initial partial filing fee that is calculated as 20 percent of the greater of the average monthly deposits or the average monthly balance for the six-month period immediately preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A)-(B). After the initial partial filing fee is paid, the prisoner is required to make monthly payments equal to 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency that has custody of the prisoner will forward payments from the prisoner's account to the court clerk each time the account exceeds $10 until the filing fees are paid. 28 U.S.C. § 1915(b)(2).

Plaintiff's certified account statement indicates that, as of August 22, 2025, his average monthly balance for the prior six months was $3.75, and his average monthly deposits were $36.37. His current account balance, as of August 22, 2025, was $0.15.

Plaintiff's application to proceed IFP will be granted, but the court will not require payment of an initial partial filing fee. Whenever Plaintiff's prison account exceeds $10, he must

2

make monthly payments in the amount of 20 percent of the preceding month's income credited to his account until the $350 filing fee is paid.

## I. SCREENING

**A. Standard**

Under the statute governing IFP proceedings, "the court shall dismiss the case at any time if the court determines that-- (A) the allegation of poverty is untrue; or (B) the action or appeal-- (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(A), (B)(i)-(iii).

In addition, under 28 U.S.C. § 1915A, "[t]he court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In conducting this review, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) track that language. As such, when reviewing the adequacy of a complaint under these statutes, the court applies the same standard as is applied under Rule 12(b)(6). *See e.g. Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000) (citation omitted).

The court must accept as true the allegations, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Allegations in pro se complaints are "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks and citation omitted).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (citation and quotation marks omitted). At a minimum, a plaintiff should include "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

**B. Plaintiff's Complaint**

In his complaint filed pursuant to 42 U.S.C. § 1983, Plaintiff asserts violations of his Fourth, Eighth, and Fourteenth Amendment rights, as well as retaliation. Plaintiff alleges that he was falsely arrested on or around December 3, 2019, by Detective Edward Ortega and Investigator O'Malley. The arrest was on the grounds that the power had been turned off at 2017 Santa Rita Dr., Las Vegas, Nevada, but he later learned that the power had been shut off by his landlady and code enforcement pursuant to a request by the detective bureau. The complaint

does not explain Plaintiff's connection to "2017 Santa Rita Dr." or why it was deemed appropriate for police to arrest him for the power being turned off. Plaintiff further alleges that he pleaded guilty to abuse/neglect on June 28, 2022, and Defendant Puit stated in a newspaper article that Plaintiff had agreed to a 10- to 25-year prison sentence, which was not true. Later, on December 16, 2022, while on house arrest, Plaintiff was given permission by Defendant Tinder to help his neighbor Cecilia Stern clean up her property, but Defendants Lopez and Tinder then remanded him back into custody. He further alleges that Tinder and Lopez violated department policy by refusing to let him look for a job while on house arrest. Plaintiff's complaint names as defendants: (1) Cecilia Stern; (2) W. Lopez; (3) A. Tinder; (4) Glenn Puit, and (5) Las Vegas Code Enforcement.

Section 1983 provides a mechanism for the private enforcement of substantive rights conferred by the Constitution and federal statutes. Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks and citation omitted).

To obtain relief pursuant to section 1983, a plaintiff must establish a "(1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991); *West v. Atkins*, 487 U.S. 42, 48-49 (1988). To adequately plead the § 1983 elements, a complaint must identify what constitutional right each defendant violated and provide sufficient facts to plausibly support each violation. *See e.g., Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (noting defendants must personally participate in misconduct to be

liable under section 1983); *see also Hines v. Yousef*, 914 F.3d 1218, 1228 (9th Cir. 2019) (defendant must have "personally played a role in violating the Constitution.").

The "threshold inquiry in a § 1983 suit" requires courts "to 'identify the specific constitutional right' at issue." *Manuel v. City of Joliet*, 580 U.S. 357, 370 (2017) (citing *Albright*, 510 U.S. at 271). "After pinpointing that right, courts still must determine the elements of, and rules associated with, an action seeking damages for its violation." *Id*. (citing *Carey v. Piphus*, 435 U.S. 247, 257-58 (1978)).

**1. Private Parties**

Neither Defendant Stern nor Defendant Puit are alleged to be state actors and instead appear to be private parties. Private parties do not generally act under color of state law for purposes of § 1983. *See O'Handley v. Weber*, 62 F.4th 1145, 1155-56 (9th Cir. 2023) (stating that only in "exceptional cases" will a private entity be treated as a state actor for constitutional purposes), *cert. denied*, 144 S. Ct. 2715 (2024). To be considered a state actor, a private party must meet: "(1) the public function test, (2) the state compulsion test, (3) the nexus test [or] (4) the joint action test." *Id.* at 1157. "These tests are interrelated, and they are designed to answer the same key question: whether the conduct of a private actor is fairly attributable to the State." *Ochoa v. Pub. Consulting Grp., Inc.*, 48 F.4th 1102, 1109 (9th Cir. 2022). A party may be treated as a state actor where "there is 'pervasive entwinement of public institutions and public officials in [the private actor's] composition and workings,'" or where "government officials have 'exercised coercive power or [have] provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.'" *O'Handley*, 62 F.4th at 1157.

The complaint does not assert any facts to support an inference that Stern or Puit should be treated as state actors. The complaint does not therefore state any § 1983 claim against Defendants Stern and Puit.

**2. False Arrest – December 3, 2019**

Plaintiff alleges that he was falsely arrested on or about December 3, 2019. Plaintiff does not list the arresting officers, Ortega or O'Malley, as defendants, so it is unclear whether he intends to assert a claim of false arrest for the arrest on this date. To the extent he is, however, he has failed to state a colorable claim.

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment provided the arrest was without probable cause or other justification." *Lacey v. Maricopa County*, 693 F.3d 896, 918 (9th Cir. 2012) (citation omitted); *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 367 (2017) ("The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause.").

Plaintiff does not allege his arrest lacked probable cause, and the complaint otherwise does not contain any facts to support such an inference. In fact, Plaintiff asserts that he was arrested for abuse/neglect, and he later pleaded guilty to that charge. Because Plaintiff was convicted of the offense for which he was arrested, and he has not demonstrated that conviction has been invalidated, his claim is precluded by *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). *Heck* bars any § 1983 claim that would necessarily imply the invalidity of a conviction unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. *Id.* Here, a finding that Plaintiff was arrested without probable cause for abuse/neglect would necessarily imply the invalidity of his conviction for his conviction on that charge. *See Agner v. City of*

*Hermosa Beach*, 315 Fed. App'x 29, 29–30 (9th Cir. 2008) (unpublished opinion). Accordingly, Plaintiff has not stated a colorable claim of false arrest.

### 3. Power Shut-Off

Plaintiff asserts that his "landlady" and "code enforcement" had the power shut off at 2017 Santa Rita Dr., Las Vegas, Nevada, at the behest of the police. As noted above, Plaintiff's relation to that address is not explained. And other than the conclusory assertion that "this was retaliation," (ECF No. 1-1 at 3), the complaint is devoid of any facts to state a plausible claim that this action amounted to a constitutional violation.

As to Plaintiff's claim of retaliation, Plaintiff does not identify what type of retaliation he claims or why he was the subject thereof. It appears to be an open question whether a claim of retaliation may be pursued under the Fourteenth Amendment, but even assuming such a claim exists, it would likely be subject to dismissal on qualified immunity grounds. *See Garrett v. Governing Bd. of Oakland Unified Sch. Dist.*, 583 F. Supp. 3d 1267, 1278 (N.D. Cal. 2022); *Ballou v. McElvain*, No. C19-05002-DGE, 2022 WL 3082739, at *2 (W.D. Wash. Aug. 3, 2022). A claim of retaliation under the First Amendment requires the Plaintiff to "plausibly allege that (1) []he engaged in a constitutionally protected activity, (2) Defendants' actions would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) the protected activity was a substantial or motivating factor in Defendants' conduct." *Sampson v. Cnty. of Los Angeles by & through Los Angeles Cnty. Dep't of Child. & Fam. Servs.*, 974 F.3d 1012, 1019 (9th Cir. 2020).

The complaint does not contain any facts supporting a claim that Plaintiff engaged in any constitutionally protected activity, that Defendants' actions would chill a person of ordinary firmness from continuing the protected activity, or that the protected activity was the motivating

factor in Defendants' conduct. The complaint therefore does not state a colorable First Amendment retaliation claim.

**4. False Arrest – December 17, 2022**

Plaintiff alleges that while on house arrest, Defendants Tinder and Lopez arrested him and remanded him to custody despite giving him permission to help his neighbor clean up her property. The suggestion appears to be that Plaintiff was arrested for helping his neighbor even though he had been given permission to do so, although this is not explicitly stated. The complaint also does not explain why, or in connection with what criminal matter, Plaintiff was on house arrest. Assuming Plaintiff was on house arrest in connection with the abuse/neglect charges referenced in the complaint, he had, at the time of this second arrest, already entered his plea of guilty to those charges.

The situation here – release pending sentencing, after entry of a guilty plea – is more closely analogized to probation than to pretrial release,[1] and as *Heck* applies in the probation revocation context, *see Baskett v. Papini*, 245 Fed. App'x 677, 678 (9th Cir. 2007) (unpublished disposition) ("The district court properly dismissed Baskett's section 1983 action as *Heck*-barred because his allegations necessarily call into question the validity of the probation revocation, and Baskett failed to allege that his sentence has been invalidated."); *Dillard v. Ada Cnty. Jail*, No.

---

[1] While the Fourth Amendment right to be free of unreasonable seizures applies to a person who has been released on pretrial bail, *United States v. Scott*, 450 F.3d 863, 868 (9th Cir. 2006) (quoting *Cruz v. Kauai County*, 279 F.3d 1064, 1068 (9th Cir. 2002)), the protections are less stringent for someone who has been adjudged guilty and is awaiting sentencing, as they are for those on parole or probation. *See id.* at 874 (citing *United States v. Kills Enemy*, 3 F.3d 1201, 1203 (8th Cir. 1993)); *Kills Enemy*, 3 F.3d at 1203 ("A convicted person awaiting sentence is no longer entitled to a presumption of innocence or presumptively entitled to his freedom. . . . As with the parole and probation cases, there is a heightened need for close supervision of the convicted person's activities to protect society and the releasee himself, and the releasee is entitled only to a conditional liberty.").

1:23-CV-00337-AKB, 2023 WL 8833479, at *3 (D. Idaho Dec. 21, 2023), the court concludes it also applies here. Because the complaint contains no facts alleging or supporting the inference that Plaintiff's remand to custody was declared invalid, the false arrest claim here is also barred by *Heck v. Humphrey*, 512 U.S. at 487.

**5. Job Search**

Plaintiff asserts that Defendant Lopez violated department policy by refusing to allow him to look for a job while on house arrest. It is unclear how Plaintiff believes this amounted to a constitutional violation of any kind. To the extent Plaintiff's December 17, 2022, arrest was based on his failure to look for or have a job, any claim of false arrest would be precluded for the same reasons set forth above.

### III. MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff has filed a motion for appointment of counsel. "[A] person [generally] has no right to counsel in civil actions." *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009) (citing *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981)). 28 U.S.C. § 1915(e)(1), however, does allow the court to "request an attorney to represent any person unable to afford counsel." That being said, the appointment of counsel in a civil case is within the court's discretion and is only allowed in "exceptional cases." *See Palmer*, 560 F.3d at 970 (citations omitted); *see also Harrington v. Scribner,* 785 F.3d 1299, 1309 (9th Cir. 2015).

In "determining whether 'exceptional circumstances' exist, a court must consider 'the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved.'" *Palmer*, 560 F.3d at 970 (quoting *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983)); *see also Cano v. Taylor,* 739 F.3d 1213, 1218 (9th Cir. 2015).

At this juncture, Plaintiff has failed to state any claim for relief. Accordingly, Plaintiff's motion for appointment of counsel will be denied without prejudice.

### IV. CONCLUSION

(1) Plaintiff's IFP application (ECF No. 1) is **GRANTED**. The court will not require payment of an initial filing fee. However, whenever Plaintiff's prison account exceeds $10, he is required to make monthly payments in the amount of 20 percent of the preceding month's income credited to his account until the full $350 filing fee is paid. This is required even if the action is dismissed or is otherwise unsuccessful. The Clerk must SEND a copy of this Order to the attention of Chief of Inmate Services for the Nevada Department of Corrections at formapauperis@doc.nv.gov.

(2) The Clerk will **FILE** the complaint (ECF No. 1-1).

(3) The complaint will be **DISMISSED WITHOUT PREJUDICE, WITH LEAVE TO AMEND**.

(4) The motion for appointment of counsel (ECF No. 1-2) is **DENIED WITHOUT PREJUDICE**.

(5) The Clerk shall **SEND** Plaintiff the instructions for filing a civil rights complaint by an incarcerated individual and form civil rights complaint by an inmate.

(6) Plaintiff has **30 DAYS** from the date of this Order to file an amended complaint curing the deficiencies noted above. The amended complaint must be complete in and of itself without referring or incorporating by reference any previous complaint. Any allegations, parties, or requests for relief from a prior complaint that are not carried forwarded in the amended complaint will no longer be before the court. Plaintiff shall check the box for the first amended complaint on the court's form civil rights complaint.

If Plaintiff fails to file an amended complaint within the 30 days, this action may be dismissed.

**IT IS SO ORDERED**.

Dated: September 15, 2025

_____
Craig S. Denney
United States Magistrate Judge